**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| United States of America, | ) | No. CR09-0670-PHX-NVW |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Robert Nejbauer, | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Robert Nejbauer moves the Court to suppress his confession and to suppress evidence obtained from a search of the apartment he shared with his son and of his two vehicles. (Doc. ## 33, 35.) Mr. Nejbauer's confession will be suppressed. The Court further finds that the government has not satisfied its burden in showing that Mr. Nejbauer's consent to the search of the apartment and two vehicles was voluntary.

**I.    Background**

Mr. Nejbauer was arrested for a series of bank robberies on May 27, 2009. That same day, he was arrested and taken to the FBI offices in Phoenix. He was placed in a room and handcuffed to a chair. FBI Special Agent Lance Leising interrogated Mr. Nejbauer. No one else was in the room during the interrogation, which was video-recorded.

Before informing Mr. Nejbauer of his *Miranda* rights, Agent Leising explained to Mr. Nejbauer why he had been placed in custody. Agent Leising told Mr. Nejbauer that

the FBI had been watching him for several days and that numerous witnesses had identified Mr. Nejbauer in connection with the robberies. Further, Mr. Nejbauer's scant criminal history and the "peaceful" manner in which the robberies were executed indicated that Mr. Nejbauer had acted out of desperation. Mr. Nejbauer was told that he would likely be prosecuted by federal authorities and that, although there were no guarantees, "your acceptance of responsibility here today will go towards [the] sentencing guideline . . . [i]t will be knocked down a couple steps and that could be very important for you, okay."

Agent Leising then read Mr. Nejbauer his *Miranda* rights. He asked Mr. Nejbauer whether he understood those rights, and Mr. Nejbauer said, "yes." Agent Leising then asked, "Would you like to talk to me a little bit about what's going on?" Mr. Nejbauer replied, "Probably." Agent Leising responded by giving Mr. Nejbauer a waiver form to sign, "Just sign here if that's alright with you." Mr. Nejbauer signed the form and said, "Would it be possible to speak to an attorney?" to which Agent Leising replied, "It's always possible to speak to an attorney. . . . If you want to speak with an attorney, I'll stop talking right now and I'll have to leave. That presents somewhat of a problem because that acceptance for responsibility[–]we can't do that anymore."

With that, Agent Leising changed the subject and began talking to Mr. Nejbauer about the apartment that Mr. Nejbauer shared with his son. Agent Leising told Mr. Nejbauer that his son already knew that Mr. Nejbauer was "doing something wrong." Agent Leising then said, "[H]e sounds like a good kid. He's going into the Navy; is that right? . . . Well, hopefully he's got a good future." Agent Leising continued,

> [W]hen I'm in situations that embarrass me or put me in a bad position, I try to think, "Hey, what would my" – "what would my kid want me to do if they were sitting here in this chair next to me?" "What would they want me to do?" And what I usually come up with, what I feel in my mind they want me to do, is take responsibility for it. Let me be a strong man right now and that's what I would expect. I would like to – I mean, we can go several different ways as far as getting a search warrant for the apartment[.]

1  Mr. Nejbauer then interrupted, "Don't do that. . . . I'll tell you whatever you want." Mr.
2  Nejbauer then consented to a search of the apartment he shared with his son and to the
3  search of his two vehicles, and made a full confession.

4  **II.     Suppression of Mr. Nejbauer's Confession**

5  Before the police can commence a custodial interrogation, the accused must be
6  informed of the right to consult with an attorney and to have counsel present during
7  questioning. *Davis v. United States*, 512 U.S. 452, 457 (1994). The accused may waive
8  that right, but the waiver must be voluntary, knowing, and intelligent. *Miranda v.*
9  *Arizona*, 384 U.S. 436, at 444, 464-65 (1966). The government bears the burden of
10 proving the accused's waiver by a preponderance of the evidence. *Colorado v. Connelly*,
11 479 U.S. 157, 167-69 (1986).

12 After a knowing and voluntary waiver of *Miranda* rights, law enforcement officers
13 may continue questioning until the accused clearly requests an attorney. *Davis*, 512 U.S.
14 at 461. However, "[p]rior to obtaining an unambiguous and unequivocal waiver, a duty
15 rests with the interrogating officer to clarify any ambiguity before beginning general
16 interrogation." *United States v. Rodriguez*, 518 F.3d 1072, 1080 (9th Cir. 2008). In
17 *Rodriguez*, the interrogating officer read the accused his *Miranda* rights and then asked
18 the accused whether he wished to speak to the officer. *Id.* at 1075. The accused replied,
19 "I'm good for tonight." *Id.* A short time later, the officer began questioning the accused.
20 *Id.* Because the accused did not unambiguously waive his right to counsel, and the
21 officer did not clarify whether the accused was asserting his *Miranda* rights, the
22 government did not meet its burden of proving an initial knowing and intelligent waiver.
23 *Id.* at 1072.

24 The facts in this case are strikingly similar to those in *Rodriguez*. After reading
25 Mr. Nejbauer his *Miranda* rights, Agent Leising asked Mr. Nejbauer whether he wished
26 to talk to him, to which Mr. Nejbauer replied, "Probably." "Probably" is an ambiguous
27 statement. Instead of clarifying whether Mr. Nejbauer was asserting his *Miranda* rights
28 as required by *Rodriguez*, Agent Leising told Mr. Nejbauer to sign a waiver card. As

soon as he signed the card, Mr. Nejbauer asked, "Would it be possible to speak to an attorney?" Even then, Agent Leising did not seek clarification. Instead, Agent Leising attempted to explain to Mr. Nejbauer why it would not be in his best interests to talk to an attorney. There was no clear initial waiver of *Miranda* rights under these circumstances.

Even assuming Mr. Nejbauer's act of signing the waiver card was a clear initial waiver of his *Miranda* rights, Mr. Nejbauer subsequently unequivocally and unambiguously requested counsel. There is no magic phrase that an accused must utter to assert the right to counsel. In determining whether Mr. Nejbauer invoked his right, his words must be reviewed as "ordinary people would understand them." *United States v. De La Jara*, 973 F.2d 746, 750 (9th Cir. 1992). Mr. Nejbauer didn't say "maybe" or "perhaps." Mr. Nejbauer said, "would it be possible," a phrase that is much closer to "can" than to "maybe." "Can I speak with an attorney?" is an unambiguous request for counsel. *See Smith v. Endell*, 860 F.2d 1528, 1529-31 (9th Cir. 1988) (deeming "Can I talk to a lawyer?" a clear invocation of the right to counsel). Similarly, "Would it be possible to speak with an attorney?" is an unequivocal request for counsel.

Considering Mr. Nejbauer's statement in light of his interaction with Agent Leising further supports the conclusion that Mr. Nejbauer unambiguously asserted his right to counsel. Mr. Nejbauer asked for counsel almost immediately after Agent Leising read Mr. Nejbauer his *Miranda* rights. Mr. Nejbauer must therefore have known that it was "possible" to talk to a lawyer. Agent Leising had just told him that he had the right to counsel. It is therefore apparent that Mr. Nejbauer's question was intended as a polite request for an attorney, and not as an inquiry into whether or not he had the right to talk to a lawyer. Agent Leising's response, "It's always possible to speak with an attorney," does not render Mr. Nejbauer's request ambiguous. In fact, Agent Leising's subsequent attempt to dissuade Mr. Nejbauer from talking to an attorney indicates that Agent Leising himself understood Mr. Nejbauer's question as a request for counsel.

Because there was no clear initial waiver of the right to counsel and no clarification before the interrogation proceeded, the government cannot satisfy its burden

1 to show that Mr. Nejbauer waived his *Miranda* right to counsel. *Rodriguez*, 518 F.3d at
2 1080. Even if there was a clear initial waiver, Mr. Nejbauer unambiguously and
3 unequivocally requested counsel and none was provided. Therefore, Mr. Nejbauer's
4 confession must be suppressed.

**III.    Consent to Search Mr. Nejbauer's Apartment and Vehicles**

Whether consent to a search is voluntary or is the product of duress or coercion is to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Five factors are used to assess the voluntariness of a defendant's consent to a search: (1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained. *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1989). No one factor is determinative. *United States v. Soriano*, 362 F.3d 494, 502 (9th Cir. 2004). The government has the burden of proving that consent was voluntarily given. *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000).

The first factor, whether the defendant was in custody, weighs in favor of Mr. Nejbauer, as he was in custody when he gave consent to search his apartment and vehicles. However, an accused can validly consent to a search, even though the consent is given while the accused is in custody. *United States v. Tolias*, 548 F.2d 277, 278 (9th Cir. 1977).

The second factor, whether the arresting officers had their guns drawn, weighs against Mr. Nejbauer. Agent Leising had his gun holstered throughout the interrogation. There is no other indication in the record that the arresting officers or Agent Leising threatened to use force against Mr. Nejbauer.

The third factor, whether *Miranda* warnings were given, tends to favor Mr. Nejbauer, but is not entitled to great weight. The Ninth Circuit has indicated that "[i]t is open to question . . . whether the inclusion or exclusion of *Miranda* warnings in a given set of circumstances should weigh much in either direction in considering voluntariness."

*United States v. Perez-Lopez*, 348 F.3d 839, 847 (9th Cir. 2003). This is because *Schneckloth*, which established the "totality of all the circumstances test," held that "knowledge of a right to refuse is [not] an indispensable element of a valid consent. The considerations that informed the Court's holding in *Miranda* are simply inapplicable in the present case." *Id.* (alteration in original) (citing *Schneckloth*, 412 U.S. at 227, 246). Further, a defendant may not find the *Miranda* warning to be informative as to his right to refuse to consent to a search. "While . . . it is not irrelevant that [a] person be told that he could remain silent . . . a frightened and confused defendant might well not suspect that the *Miranda*-type warning is equally applicable to a search." *Id.* (citation omitted).

The warnings that Agent Leising read to Mr. Nejbauer were probably ineffective. It is unlikely that Mr. Nejbauer believed that his *Miranda* rights would be honored when he asserted his right to counsel and his request was ignored. *See Missouri v. Seibert,* 542 U.S. 600, 612-13 (2004) ("[I]t would be absurd that the mere recitation of the litany suffices to satisfy *Miranda* in every conceivable circumstance. 'The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by *Miranda*.'") (alteration in original) (quoting *Duckworth v. Eagan*, 494 U.S. 195, 203 (1989)). However, because informing the accused of his *Miranda* rights bears little upon whether an accused's consent to a search was voluntary, this factor, although it favors Mr. Nejbauer, will not be accorded very much weight.

The fourth factor, whether the defendant was notified that he had a right not to consent, weighs in favor of Mr. Nejbauer. There is no indication in the record that Mr. Nejbauer was told that he had a right not to consent to the search. In fact, Agent Leising, knowing that Mr. Nejbauer was extremely concerned about his son, attempted to persuade Mr. Nejbauer to consent by telling him that his son would want him to take responsibility for his actions.

The fifth factor, whether the defendant was told that a search warrant could be obtained, does not favor either party. The application of this factor hinges on whether the defendant is informed about the possibility of a search warrant in a threatening manner.

*United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). Furthermore, this factor is significantly diminished when probable cause to justify a warrant exists. *United States v. Soriano*, 362 F.3d at 504-05. Mr. Nejbauer was told that a search warrant could be obtained without his consent, but there is no evidence in the record that he was told in a threatening manner. Furthermore, the government very likely had probable cause to obtain a warrant. Therefore, this factor favors neither Mr. Nejbauer or the government.

The context in which Mr. Nejbauer made his decision to consent is also relevant to a determination of voluntariness. *See United States v. Washington*, 490 F.3d 765, 775 (9th Cir. 2007) (the context in which the defendant consented to the search of his car was important to the determination of voluntariness). *Schneckloth* instructs courts to "determine[] the factual circumstances surrounding the confession, assess[] the psychological impact on the accused, and evaluate[] the legal significance of how the accused reacted." *Schneckloth*, 412 U.S. at 226 (citing *Culombe v. Connecticut*, 376 U.S. 568, 603 (1961)). Factors to be considered include, "the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *Id.* (internal citations omitted). In addition, "[i]n examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Id*. at 229.

The circumstances surrounding Mr. Nejbauer's decision to consent, taken together, suggest that there may have been a lack of true voluntariness. There is nothing in the record to suggest that Mr. Nejbauer has minimal schooling or is of low intelligence. Mr. Nejbauer is also a mature man of forty-eight with some criminal history more a decade ago. On the other hand, Agent Leising's conduct–successfully dissuading Mr. Nejbauer from talking to a lawyer and immediately thereafter pressuring him to consent to the search–would reasonably suggest to Mr. Nejbauer that it was simply futile to withhold his

consent to Agent Leising's demands.  Furthermore, Agent Leising's plainly misleading statements regarding the need to dispense with a lawyer and cooperate right away with the FBI in order to receive a sentencing reduction would reasonably lead Mr. Nejbauer to believe that, if he did not comply with Agent Leising's requests immediately, he would lose the opportunity to obtain leniency in the future.

In sum, the five *Castillo* factors do not cut squarely in favor of either party, and the circumstances surrounding the interrogation suggest that there may have been coercion. It is the government's burden to show that consent was given voluntarily, and the government has failed to satisfy that burden.

The government has submitted late additional briefing with alternate grounds to justify the validity of the search of Mr. Nejbauer's apartment and vehicles.  (Doc. # 47.) The Court will consider those additional grounds concerning the validity of the apartment and automobile searches after the defense has responded.  An additional evidentiary hearing will be granted if requested and appropriate.

IT IS THEREFORE ORDERED that the Defendant's Motion to Suppress Defendant's Statements (doc. #33) is granted.

IT IS FURTHER ORDERED that final ruling on the Motion Suppress Evidence (doc. # 35) is deferred until after Defendant has responded to government's Supplemental Filing (doc. # 47).

DATED this 2nd day of November, 2009.

_____
Neil V. Wake
United States District Judge